IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| MICHAEL KING,<br>    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>    Defendant. | Case No. 1:23-cv-00065<br>Judge Frensley |

## MEMORANDUM OPINION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record Pursuant to 42 U.S.C. § 405(g). Docket No. 13. Plaintiff has filed an accompanying Memorandum. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16. Plaintiff has filed a Reply. Docket No. 17.

For the reasons stated below, Plaintiff's Motion for Judgment on the Administrative Record Pursuant to 42 U.S.C. § 405(g) is **GRANTED** and this action is **REMANDED**.

### I.     INTRODUCTION

Plaintiff filed his applications for DIB and SSI on July 23, 2020, alleging that he had been disabled since January 31, 2019, due to dysphagia, carpal tunnel, headaches, kidney disease, high blood pressure, and rectal bleeding. Docket No. 8, Attachment ("TR"), TR 343-58, 370-83.

Plaintiff's applications were denied both initially (TR 109-10) and upon reconsideration (TR 167-68). Plaintiff subsequently requested (TR 251-52) and received (TR 34-72) a hearing. Plaintiff's hearing was conducted on June 21, 2022, by Administrative Law Judge ("ALJ") Shannon Heath. TR 34. Plaintiff and vocational expert ("VE"), Kathy Smith, appeared and testified. *Id.*

On August 3, 2022, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 14-33. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2. The claimant has not engaged in substantial gainful activity since January 31, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: diabetes mellitus; cervical degenerative disc disease; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to: occasional postural activities; avoid concentrated exposure to temperature extremes; and avoid even moderate exposure to unprotected heights and moving machinery.

6. The claimant is capable of performing past relevant work as a retail stocker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2019, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 20-22, 26.

On August 5, 2022, Plaintiff timely filed a request for review of the hearing decision. TR 338-39. On July 25, 2023, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. LAW AND ANALYSIS

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F. 2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

3

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229.

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and

4

Case 1:23-cv-00065   Document 18   Filed 08/06/24   Page 4 of 18 PageID #: 1648

work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

B.   Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.1  If a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

5. The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F. 2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F .2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ's determination of non-disability lacks substantial evidence

6

Case 1:23-cv-00065   Document 18   Filed 08/06/24   Page 6 of 18 PageID #: 1650

because (1) the ALJ incorrectly classified some of Plaintiff's impairments as non-severe, and (2) in her RFC determination, the ALJ failed to consider some of Plaintiff's non-severe impairments. Docket No. 14, p. 1. Accordingly, Plaintiff maintains that pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be remanded. *Id.*; Docket No. 13, p. 1.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F. 3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

### (1) Failure to Classify Some of Plaintiff's Impairments as Severe

Plaintiff contends that the ALJ's decision lacked substantial evidence because several of Plaintiff's impairments were wrongly classified as non-severe at step two of the ALJ's evaluation process. Docket No. 14, p. 7. Plaintiff argues that the ALJ failed to properly evaluate the severity of Plaintiff's chronic kidney disease (CKD), hypertension, headaches, nausea, vomiting, and need for a nebulizer because these conditions cause more than a minimal effect on basic work activities. *Id.* at 8-12.

7

Plaintiff asserts that persistent and long-lasting headaches are well-documented in his medical records and should have been considered either as a manifestation of CKD and hypertension or as a severe impairment in its own right. *Id.* Plaintiff argues that the record is replete with references to headaches, including migraines, which are known symptoms of hypertension. *Id.* Plaintiff maintains that these conditions significantly affect concentration and the ability to maintain a consistent work schedule. *Id.*

Plaintiff also argues that the ALJ erred in finding Plaintiff's nausea and vomiting to be non-severe because the conditions cause more than a minimal effect on the Plaintiff's ability to perform work-related activities. *Id.* at 9. Plaintiff argues that these conditions would cause more than a minimal effect because of the need for unscheduled breaks to vomit or clean up from vomiting. *Id.* Plaintiff adds that the feelings of nausea likely would also result in Plaintiff having additional time off task. *Id.* Plaintiff asserts that the record documents his history of nausea and vomiting associated with CKD and hypertension, which significantly impacts his ability to work. *Id.* Plaintiff adds that the VE testified that the need to take multiple breaks during the day to manage vomiting would severely limit job availability. *Id.* at 10. Plaintiff maintains that his own testimony indicated that on bad days, he could experience up to four vomiting episodes lasting up to two hours. *Id.* Plaintiff argues that not considering Plaintiff's nausea and vomiting was harmful error because the VE testified that someone who had to take approximately four 10-minute breaks a day to vomit likely would not have any jobs available to him. *Id.*

Plaintiff also argues that the ALJ erred in not classifying his use of a nebulizer as severe, stating that it necessitates unscheduled breaks which significantly impact basic work activities due to its more than minimal effect. *Id.* at 12. Plaintiff argues that he testified to needing a nebulizer four to five times a day, with each session taking approximately 15-20 minutes. *Id.* at 11.

Defendant responds that any alleged error in not identifying some impairments as severe is "legally irrelevant." Docket No. 16, p. 4. Defendant maintains that in this case, because the ALJ fully addressed all the relevant impairments for severity purposes, found at least one severe impairment, and considered the impairments in combination at the remaining steps, remand is not indicated.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as a de minimis hurdle in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F. 2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F. 2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F. 2d 240, 244 (6th Cir. 1987).

In this case, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, cervical degenerative disc disease, and obesity. TR 20. Because the ALJ specifically found that Plaintiff had at least one severe impairment, the ALJ's failure to find Plaintiff's CKD, hypertension, headaches, nausea, vomiting, and use of a nebulizer to also be severe simply cannot

9

Case 1:23-cv-00065   Document 18   Filed 08/06/24   Page 9 of 18 PageID #: 1653

constitute reversible error. *See Maziarz*, 837 F. 2d at 244 (6th Cir. 1987). Accordingly, Plaintiff's argument on this point fails.

### (2) The ALJ's Consideration of Plaintiff's CKD, Hypertension, Headaches, Nausea, Vomiting, and Use of a Nebulizer in Determining Plaintiff's RFC

Plaintiff contends that although the ALJ discussed Plaintiff's CKD, hypertension, and headaches at step two of the evaluation process, the ALJ did not consider those symptoms in making the RFC determination in step four. Docket No. 14, p. 7. Plaintiff asserts that his CKD, hypertension, and headaches are well-documented throughout his medical records. *Id.* at 8. Plaintiff contends that the record demonstrates his CKD through consultations with his doctor, encompassing three and a half years of follow-up appointments discussing his CKD and related symptoms, including hypertension. *Id.* at 3. Plaintiff adds that his records are replete with references to headaches, including migraines, and that he testified that they were getting worse. *Id.* at 8.

Additionally, Plaintiff contends that in finding his subjective complaints related to CKD and hypertension symptoms not to be fully credible, the ALJ erred in her analysis. *Id.* at 6-7. Plaintiff contends that the ALJ misstated her obligations by requiring Plaintiff to show objective evidence of his symptoms. *Id.* Plaintiff maintains that 20 C.F.R. § 404.1529 requires only he must have "objective medical evidence" showing a medical impairment, "which could reasonably be expected to produce pain, or other symptoms alleged," not objective medical evidence of symptoms. 20 C.F.R. § 404.1529. Plaintiff asserts that because objective medical evidence established Plaintiff's CKD and hypertension, the ALJ should have considered the intensity and persistence of symptoms associated with these impairments. Docket No. 14, p. 7. Plaintiff argues that the ALJ failed to consider the intensity and persistence of Plaintiff's CKD and hypertension symptoms. *Id.*

10

Plaintiff also contends that despite evidence of nausea and vomiting throughout the record, including in his testimony, the ALJ failed to consider these conditions. *Id.* at 9. Plaintiff points to the following evidence of his nausea and vomiting:

> On March 4, 2019, Mr. King reported that he has lost 7 lbs. due to his vomiting and nausea. (R. 1065). In July 2020, he reported continued nausea, vomiting and dizziness. (R. 1222). In Feb. 2021, he reported "throwing up" due to his pain and stated that his vomiting tends to subside when his blook pressure goes down. (R. 1334, 1337). In May 2021, he reported vomiting and heartburn/indigestion and increased fatigue causing him to sleep a lot during the date. (R. 1300). In June 2021, he reported his dysphagia for solid food "has been getting progressively worse." (R. 1504). As of Aug. 2021, he was still reporting nausea and vomiting of old food. (R. 1071). In Nov. 2021, he continued to report nausea and vomiting, as well as upper abdominal pain. (R. 1510).

*Id.*

Plaintiff argues that despite the repeated reports of these conditions in the record including multiple tests done to try and determine their cause, the ALJ did not address them in making her RFC determination. *Id.* at 10. Plaintiff asserts that this was harmful error because the VE testified that someone who had to take approximately four 10-minute breaks a day to vomit likely would not have any jobs available to him. *Id.* Plaintiff maintains that he testified that on bad days he could have 3-4 vomiting attacks that can last up to two hours. *Id.*

Plaintiff also argues that despite the evidence and testimony in the record showing his use of a nebulizer, the ALJ failed to consider his use of a nebulizer in making the RFC determination. *Id.* at 11-12. Plaintiff maintains that he testified to using a nebulizer four to five times a day, with each session taking him about 15 to 20 minutes. *Id.* at 11. Plaintiff asserts that despite his testimony, the ALJ did not mention Plaintiff's use of a nebulizer anywhere in the decision. *Id.* Plaintiff maintains that this was harmful error because the need to take unscheduled breaks during the day has more than a minimal effect on basic work activities and that the VE in this case testified that a person who had to take at least two unscheduled breaks of 20 minutes during the day likely

11

would not have any jobs available to him. *Id.* at 12.

Defendant responds that the ALJ properly considered each of Plaintiff's impairments in combination while making her RFC determination. Docket No. 16, pp. 4-5. Defendant asserts that the ALJ properly considered Plaintiff's impairments in combination under 20 C.F.R. § 416.945(e) because the ALJ specifically noted in her decision that Social Security Ruling 96-8p required her to consider the severe and non-severe impairments in combination in formulating the RFC, and the ALJ stated that the RFC was based on the "entire record," including all of Plaintiff's symptoms. *Id.*

Defendant cites the Sixth Circuit case, *Emard v. Comm'r of Soc. Sec.*, in which the Sixth Circuit discussed the extent to which an ALJ must consider non-severe impairments when crafting a claimant's RFC, even when there is no discussion of the impairments in the RFC section of the ALJ's analysis. Docket No. 16, p. 5 *citing* 953 F. 3d 844, 851 (6th Cir. 2020).

Defendant argues that the ALJ considered Plaintiff's CKD and its symptoms in her RFC determination because the ALJ had expressly discussed the effective treatment of Plaintiff's CKD, hypertension, and headaches at step-two of her evaluation and discussed Plaintiff's headaches again at step four. Docket No. 16, p. 5. Defendant maintains that Plaintiff's nausea and vomiting were considered by the ALJ as part of the ALJ's discussion of Plaintiff's gastroesophageal reflux disease (GERD) and dysphagia. *Id.* at 4. Defendant also argues that Plaintiff's alleged nausea and vomiting are symptoms of his GERD and dysphagia and not impairments in and of themselves. *Id.* As for Plaintiff's use of a nebulizer, Defendant asserts that the ALJ properly determined that the record did not support Plaintiff's allegations. *Id.* at 6. Defendant argues that the ALJ properly found Plaintiff's allegations inconsistent with the record as a whole, including the opinion evidence, Plaintiff's conservative medical treatment, and the other medical evidence, and that the

ALJ's consideration of the subjective aspects of Plaintiff's complaints comported with the regulations at 20 C.F.R. §§ 404.1529, 416.929. *Id.*

When an ALJ does not expressly discuss a claimant's non-severe impairments in step-four of her evaluation (the RFC determination), courts in this Circuit have interpreted *Emard as* requiring an ALJ to do more than merely state that SSR 96-8p controls her analysis; she must also expressly discuss how the claimant's non-severe impairments functionally limit the claimant (if at all) in step two of the analysis. *See, e.g., Harrington v. Saul*, No. 3:20-cv-00852-JRK, 2021 WL 3174273, at *10 (N.D. Ohio July 9, 2021) (collecting cases). More recently, courts within the Sixth Circuit have found that in order to comply with *Emard*, ALJs must also include a "subsequent assurance that [the ALJ] had considered the entire record and all symptoms." *Farell v. O'Malley*, No. 22-125-CJS, 2024 WL 1259255, at *8 (E.D. Ky. Mar. 25, 2024)(citations omitted).

Here, the Sixth Circuit's decision in *Emard* actually supports Plaintiff's position that the ALJ's determination is deficient because the ALJ did not properly consider some of Plaintiff's impairments in step four or step two of her decision. The ALJ expressly stated that her decision was controlled by SSR 96-8p and subsequently assured that she had considered the entire record and all of Plaintiff's impairments. TR 20. The ALJ also properly considered the functional limitations caused by Plaintiff's CKD, hypertension, and headaches. TR 20-21. However, unlike the ALJ in *Emard*, who expressly discussed the functional limitations imposed by the claimant's non-severe impairments at step two of her evaluation, the ALJ here failed to consider or even mention Plaintiff's nausea, vomiting and use of a nebulizer at step two of her evaluation. TR 20-21.

An ALJ must go through a two-step process when analyzing a claimant's symptoms. "According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall

not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F. 3d 762, 772 (6th Cir. 2001). First, the Court must "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F. 3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F. 2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. 20 C.F.R. § 416.929(a); *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d 234, 247 (6th Cir. 2007). The ALJ considers not only the claimant's complaints of symptoms, but also objective medical evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d 234, 248 (6th Cir. 2007). "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.*

Here, at step two of the ALJ's evaluation, she considered Plaintiff's CKD, hypertension, and headaches as follows:

> The record also includes some evidence of gout, hyperlipidemia, hypertension, tension headaches, history of renal mass, chronic kidney disease (CKD), osteoarthritis of the left knee, dysphagia, right shoulder pain, and carpal tunnel syndrome (CTS). However, the objective evidence reveals these impairments are non-severe as they do not cause more than minimal limitations. Additionally, many of the impairments caused only temporary limitations. Regarding his headaches, there is no evidence the symptoms lasted 12 months in duration or were more than minimally functionally limiting. Records of neurologist Dr. McNulty revealed his headaches were relieved with medication and had "near resolution of his tension headaches" (Exhibit 15F, p.26). While there were occasional headaches, medication reduced the frequency significantly thereafter.
>
> The claimant's CKD and history of renal mass was treated effectively with nephrologists at Southern Tennessee Urology (Exhibits 22F, 23F). Medication management proved effective as the symptoms did not cause more than minimal functional limitations arising from these conditions. MRIs of the kidney appeared normal in March 2022. The overall functioning of his kidneys within the period in question proved "great with treatment["] (Exhibit 12F, p.12)… The claimant's

14

> GERD and dysphagia was effectively treated with conservative medicine and there is no allegation or record of adverse side effects from the medications. The claimant was gaining weight, which revealed diminishing functional severity of the impairments. Abdomen exams were unremarkable in recent visits.
>
> . . .
>
> Overall, there is no objective evidence suggesting the need for restrictions regarding any of these impairments. Accordingly, the claimant's gout, hyperlipidemia, hypertension, tension headaches, history of renal mass, chronic kidney disease, osteoarthritis of the left knee, dysphagia, right shoulder pain, and CTS are non-severe.

TR 20-21.

At step four, the ALJ expressly discussed Plaintiff's headaches. TR 22-23. Specifically, the ALJ stated:

> The claimant alleges a history of neck pain, aches, dizziness, weakness, decreased mobility, headaches, and fatigue since the alleged onset date.
>
> . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

TR 22-23.

The ALJ also discussed how she would consider Plaintiff's symptoms when determining his RFC:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

TR 22.

The consideration of Plaintiff's CKD in the ALJ's RFC determination includes the ALJ's evaluation of medical and testimonial evidence of record, including Plaintiff's effective medical treatment, normal MRIs of Plaintiff's kidney, and normal abdomen exams. TR 20-21.

Additionally, in making her RFC determination, the ALJ expressly discussed Plaintiff's hypertension and near resolution of Plaintiff's tension headaches at step two and therefore considered these conditions and considered Plaintiff's headaches again at step four. TR 20-22. The ALJ properly evaluated the evidence involving these impairments, and the Regulations do not require more.

Regarding Plaintiff's nausea and vomiting, although Defendant appears to argue that these are symptoms of GERD and dysphagia and therefore were considered during the discussion of those impairments, the record indicates that Plaintiff's nausea and vomiting were mainly symptoms of Plaintiff's CKD and hypertension. TR 1337-38. More importantly, the ALJ's decision does not connect nausea and vomiting to Plaintiff's GERD or dysphagia—in fact, these symptoms are not mentioned at all. *See* TR 17-26. Consequently, this Court is unable to determine how, or if, the ALJ considered nausea or vomiting. This is despite the fact that Plaintiff testified that on bad days, he could have 3-4 vomiting attacks that can last up to two hours. TR 59.

Courts in the Sixth Circuit have remanded cases where the ALJ failed to address the effect of nausea and vomiting on the RFC determination. *See*, *e.g.*, *Harrington*, No. 3:20-cv-00852-JRK, 2021 WL 3174273 at *10 ("the ALJ's failure to consider Harrington's chronic vomiting at subsequent steps in the sequential evaluation is a legal error that nevertheless requires remand"); *Taurus B. v. Commissioner of Soc. Sec.*, No. 3:20-cv-0438, 2022 WL 1025027 at *5 (S.D. Ohio Apr. 5, 2022) (remand where the ALJ's RFC determination failed to consider "Plaintiff's complaints of near-constant nausea and vomiting").

Given these considerations, regardless of whether nausea and vomiting are symptoms or impairments, the ALJ's failure to explicitly address them and their impact on Plaintiff's functional abilities and potential off-task time at work constitutes a harmful error. The decision does not

provide a comprehensive evaluation of the Plaintiff's symptoms during the entire period of alleged disability, which undermines the validity of the ALJ's conclusions regarding the Plaintiff's RFC.

Additionally, although Plaintiff testified to using a nebulizer four to five times a day, for 15-20 minutes per session, the ALJ did not discuss Plaintiff's use of a nebulizer anywhere in the decision. TR 55. The ALJ should have considered the potential for Plaintiff's use of a nebulizer to cause off-task time at work. Instead, the ALJ did not discuss Plaintiff's use of a nebulizer in any way. *See* TR 17-26. It is therefore impossible for this Court to determine to what extent, if any, the ALJ considered Plaintiff's use of a nebulizer and its potential impact on his RFC.

Courts in the Sixth Circuit have remanded cases when the ALJ failed to address the effect of the need to use a nebulizer on a claimant's RFC. *See, e.g., Beauregard v. Comm'r of Soc. Sec.*, No. 3:07-cv-1740, 2009 WL 961146, 2009 at *1 (N.D. Ohio Apr. 7, 2009) (reversing the Commissioner's non-disability finding where the claimant testified she must use a nebulizer 4–6 times per day, each for fifteen minutes, and the ALJ "failed to discuss the nebulizer altogether"); *Quibell v. Comm'r of Soc. Sec.*, No. 00–10427–BC, 2004 WL 1765466, at *3-4 (E. D. Mich. July 14, 2004)(finding the ALJ's decision of not disabled was unsupported by substantial evidence where the ALJ failed to consider the claimant's need to take on-demand nebulizer treatments when necessary); *see also Palmer v. Comm'r of Soc. Sec.*, No. 1:21-cv-236, 2022 WL 4244341, at *4 (W. D. Mich. Sept. 15, 2022).

The ALJ's failure to consider Plaintiff's nausea, vomiting, and use of a nebulizer at subsequent steps in the sequential evaluation is a legal error that requires remand. When determining Plaintiff's RFC on remand, the ALJ should also address the potential that these conditions have for causing Plaintiff to be off task. The ALJ must then determine whether Plaintiff can meet the demands of a significant number of jobs in the national economy despite his

17

Case 1:23-cv-00065   Document 18   Filed 08/06/24   Page 17 of 18 PageID #: 1661

limitations, including nausea, vomiting, and use of a nebulizer.

Accordingly, for the reasons stated herein, Plaintiff's Motion for Judgment on the Administrative Record pursuant to 42 U.S.C. § 405(g) is **GRANTED** and this action is **REMANDED** for actions consistent with this opinion.

    **IT IS SO ORDERED.**

    **JEFFERY S. FRENSLEY**
    **United States Magistrate Judge**